Anton Ewing
3077 B Clairemont Drive #372
San Diego, CA 92117

Plaintiff In *Pro Per*

FILED
JUL 12 2022
CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY [signature] DEPUTY

**THE UNITED STATES FEDERAL DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

Anton Ewing,

Plaintiff,

vs.

Carolein Gorges Toma, an individual; Big Block Realty, Inc, a California corporation,

Defendants.

Civil Case No. 21-CV-1724 JO MDD

**PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

Judge: Hon. Jinsook Ohta
Date: August 17, 2022
Time: ~~1:30~~ PM 9:00AM

Ex parte motion to continue filed

Plaintiff Anton Ewing ("Plaintiff"), an individual, responds in opposition to each and every averment, assertion and allegation contained in ECF No. 6 and 38.

## I. INTRODUCTION

1. The motion to strike contained within the motion to dismiss is improper, hereby objected to and is frivolous as that term is defined by law. The Defendants are required to obtain a telemarketing bond and to register with the California Depart of Justice to engage in outbound cold calling to promote their business. I It

is the law. Defendant is required to obey the law. This act of registration is required and not optional and it is directly and immediately relevant to this case. Nothing about these averments in the Complaint is within the realm of a motion to strike. Even asking the Court to strike is frivolous and should be sanctioned with monetary penalties against the defense.

2. Defendant Carolein Gorges Toma (herein "Toma"), through her[1] employer and real estate broker of record, Big Block Realty, Inc, (herein "Big Block") directly called Plaintiff's cell phone at 619-719-9640, twice, with an automatic telephone dialing system that has the capacity to store numbers and to dial them automatically, all of which took place on September 29, 2021. Defendant Toma admitted, via a subsequent email, that she illegally recorded the telemarketing calls that she made to Plaintiff.

3. When Toma called Plaintiff without consent, devoid of any pre-existing business relationship, and recorded the confidential communication between the Parties, she committed the civil violation of PC §632.7 and 637.2 which prohibits the recording of confidential communications. This is not a landline case. This is a cell phone case. CIPA applies, *inter alia*, to cell phones.

---

[1] Plaintiff does not mean to insult or embarrass Toma and is simply without knowledge of whether Toma is properly pronounced as she, her, he, him, they, ze, hir, xe, wyr, ve or vis. For clarity, Toma will be referred to as she or her.

4. Big Block Realty, Inc is vicariously liable for the illegal acts of Toma as set forth in the Complaint. The words "vicariously liable" mean that Big Block is liable for the acts of its agent, Toma, that it controls, trains and supervises. Big Block is Toma's employer. Big Block Realty, Inc has master-servant liability because they failed to properly (within the bounds of legal acts) control, train and regulate Toma's activities that are within the course of scope of her employment. Big Block Realty, Inc is the alter ego of Toma as Toma's acts are directly imputed to Big Block Realty, Inc through their agency. Big Block Realty, Inc, told Toma what to do, how to do it and provided the time, place and manner of how to violate the TCPA in this matter. Big Block provided the office space in San Diego for Toma, as well as the automatic computer dialing system that Big Block required her to use when she repeatedly[2] called Plaintiff to solicit her real estate services.

5. Big Block Realty, Inc told, ordered and instructed Toma to purchase leads from RedX and to call those numbers even though Plaintiff's number was on the DNC Registry. In fact, the RedX data file actually listed Plaintiff's number as a DNC registered number. Toma's acts were knowing and intentional.

---

[2] Defendant's attorneys mention, without support, and devoid of any declaration under oath, that Toma's email eludes to one call. However, their failure to provide a declaration is obvious and glaring. It is well-settled law that undisputed claims in the Complaint must be taken as true and correct at the motion to dismiss stage. Thus, Toma made two calls which means she made more than one call in a 12-month period.

6. Big Block Realty, Inc cannot hire agents like Toma to engage in criminal activity, specifically violation of 47 USC §501 and Penal Code §632.7, without taking on full civil liability for her actions done at its direction and control.

7. Neither the TCPA nor CIPA require the speaker (here Toma) to say anything. The violation is complete upon the dialing of Plaintiff's phone number. Defendant's know this; and defense counsel is intimately familiar[3]. Defendant's argument that CIPA and the TCPA turns on what was said orally, is entirely without merit. In fact, it is frivolous and harassing. Defendant's attorneys are no stranger to TCPA litigation. It is all that they do, every day. If Plaintiff were to do what Defendant's attorney are now doing, he would be crucified by the court and sanctioned. Attorneys should be, in fact they must be, held to a high standard. When attorneys engage in such conduct devoid of merit, it must back-fire on them, less they become emboldened to commit these unprofessional maneuvers again and again. If the Court is not going to stop them now, then when? When is enough going to be enough? When is the Court going to make an example of an attorney that engages in deceitful and vexatious conduct? Defendant's Reply to this Response should show cause why they should not be sanctioned.

---

[3] The fact that defense counsel would say otherwise is likely deceit by an attorney at law. See B&P §6128. The Court should set an OSC to inquire of defense counsel their sincerity in their averments.

8. On September 29, 2021: Toma's first call to Plaintiff was at 9:05 AM. Toma's second call to Plaintiff was at 10:49 AM. Both calls were without consent or permission of Plaintiff. Toma's first email to Plaintiff was at 11:30 AM. Toma could have provided the Court with a declaration under oath explaining herself, but she failed to do so. Defendant's attorneys claim that Plaintiff has failed to adduce specific facts. Is not the exact date and time of the calls, right down to the minute, sufficient facts? It is all that Congress required.

9. Christine M. Reilly, Esq has been the attorney of record on 114 federal cases. She has 18 years of experience litigating TCPA cases. More importantly, she is very familiar with the California Supreme Court ruling in *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 202-03, 276 Cal. Rptr. 3d 746, 483 P.3d 869, 881 (2021) that was handed down just 209 days prior wherein the highest court[4] in California interpreted California's PC §637.2 to allow civil lawsuits for illegal recording of **cellular** telephone calls. It does not get any more clear than that. Why attorneys are allowed to get away with this conduct is shocking.

10. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system ("ATDS"); and (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A). Plaintiff

---

[4] California Supreme Court holdings over-rule federal district court rulings on California state law interpretations.

has accused, in the Complaint, that Toma (a person), called Plaintiff's cellular telephone number (619-719-9640), and that the bubble-popping sound indicates that it was a ATDS, and Toma did not obtain Plaintiff's prior express consent, but in fact Plaintiff registered his number on www.donotcall.gov long before. Moreover, RedX expressly informed Toma that Plaintiff's number was "DNC" meaning it was listed as Do Not Call.

11. The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

12. In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), aff'd, 755 F.3d 1265 (11th Cir. 2014).

13. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Dolemba v. Ill. Farmers Ins. Co.*, No. 15 C 463, 2015 U.S. Dist. LEXIS 104314 (N.D. Ill. Aug. 10, 2015) (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)), *Golan v. Veritas Entm't, LLC,* 788 F.3d 814 (8th Cir. 2015), *Payton v. Kale Realty, Ltd. Liab. Co.*, 164 F.

Supp. 3d 1050 (N.D. Ill. 2016). Defendant's attorneys know this. In an act, which can only be described as willful deceit, Defendant's attorneys, at PageID.88 and 89, stated: "Plaintiff provides virtually no content of the alleged call as noted above beyond the partial email attached the Complaint (p. 38)—which does not indicate he was offered any goods or services…." Defendants are actually asking the Court to dismiss the case "on this basis, as well." "Neither the statute nor the regulations require an explicit mention of a good, product, or service where the implication is clear from the context. Any additional information provided in the calls does not inoculate them. See 2003 Report and Order ¶ 142. " *Chesbro v. Best Buy Stores, L.P., 705 F.3d 913, 918* (9th Cir. 2012). The Defendant's motion is patently deceitful and devoid of merit given the very clear dearth of authority.

14. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

15. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of*

*1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call or in the future. *Id.*

16. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003). Under *Chevron* deference, the Court must take FCC rulings as the law. "This interpretation is entitled to deference." See *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984) ("We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer . . . ."). *Protect Our Cmtys. Found. v. Black*, No. 14cv2261 JLS (JMA), 2016 U.S. Dist. LEXIS 184911, at *25 (S.D. Cal. Mar. 29, 2016).

17. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

18. Further, the FCC has issued rulings and clarified that consumers are entitled

to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending him the text message). (*emphasis added*).

19. As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any additional harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)). See also 9th Amendment to US Constitution. Plaintiff has the unenumerated right to be left alone and not harassed by telemarketers.

20. Wherever the word "Defendants" is used in the Complaint, it means both Toma and Big Block Realty, Inc. Defendant's attorneys were able to easily and quickly file an Answer to Plaintiff's exact same complaint in prior TCPA cases. It is blatantly deceitful for these same attorneys to claim they cannot understand the

Complaint now. This is not the first time Plaintiff and Reilly/Haule have litigated eachother. The fact that attorneys are allowed to get away with this conduct is shocking.

21. Big Block Realty, Inc is and was, at all times relevant to this action, a knowingly and intentionally authorized and controlled agent of Carolein Gorges Toma. "Accordingly, to the extent Plaintiff seeks to hold [Big Block] liable for any purported violations of the TCPA, he must adequately allege an agency relationship premised on actual authority." *Ewing v. Freedom Forever Ltd. Liab. Co.*, No. 20-cv-880-JLS (AHG), 2021 U.S. Dist. LEXIS 53561, at *9 (S.D. Cal. Mar. 22, 2021). The actual authority here is bolstered by[5] the fact that Toma is licensed agent number 01998832 under Big Block Realty, Inc (broker number 01885775) according to the California Department of Real Estate. In order for an agent to be licensed under a broker, there must be a written contract. This fact is judicially noticeable, and it is indisputable.

22. Defendant Big Block Realty, Inc used an ATDS[6] system to robodial Plaintiff on Plaintiff's cell phone to sell Plaintiff on her real estate program. Carolein Gorges Toma stated on the phone to Plaintiff that Carolein Gorges Toma

---

[5] And has not been disputed under oath by Defendants.

[6] The term ATDS is as defined by the US Supreme Court in *Facebook vs Duguid* – 4/1/2021.

purchased, set up and used the auto dialer to blast out thousands of telemarketing calls to get real estate listing business. Carolein Gorges Toma admitted on the phone that she did not have permission or consent to call or text Plaintiff prior to sending out any of her telemarketing calls that are the subject of this lawsuit.

23. Plaintiff's allegation that an ATDS was used is supported, proven and bolstered by the fact that a distinct bubble popping sound was heard at the very beginning of the calls before connecting to Toma. This occurred on each call.

24. In the Complaint, Plaintiff is suing both defendants for violation of the regulations incorporated into 47 USC §227(c)(5): 47 C.F.R. §64.1200(d)(1) for not having a written policy, for not providing Plaintiff with a copy, and for not maintaining a do-not-call list as well as calling a residential[7] telephone subscriber who has registered his telephone number on the national do-not-call registry.

25. Defendants are being sued for violating 47 USC §227(b)(1)(A), 47 USC §227(c)(5), and CIPA at PC §632.7 and §637.2. Defendants are not being sued for any PC §632 violation as that only applies to landlines.

26. PC §637.2 and PC 637.2 apply to cellular phones. Defendants argue, frivolously, that CIPA only applies to landlines. This is simply not true. *Brinkley*

---

[7] Here "residential" does not mean "landline" but rather private personal cellular phone. Defendants nor their attorneys have made a declaration under oath to the contrary. Nor can they do so, truthfully. .

*v. Monterey Fin. Servs., LLC*, 340 F. Supp. 3d 1036 (S.D. Cal. 2018). Defendant's attorneys know that their argument in this regard is false and fraudulent. The Court should sanction Defendant's attorneys for this intentional violation[8]. "Frivolous means 'lacking in legal basis or legal merit.'" *Strojnik*, 2021 U.S. Dist. LEXIS 6824, 2021 WL 120899, at *3 (quoting Black's Law Dictionary 738 (9th ed. 2009)). *Rutherford v. Evans Hotels, LLC*, No. 18-CV-435 JLS (MSB), 2021 U.S. Dist. LEXIS 92626, at *8 (S.D. Cal. May 14, 2021). Defendant's attorneys have been put on repeat notice of this fact via email.

27. Carolein Gorges Toma is an officer of Defendant Big Block Realty, Inc. Defendant's attorneys and both Defendants have not provided a declaration to dispute this fact.

28. Carolein Gorges Toma is an owner of Defendant Big Block Realty, Inc. Defendant's attorneys and both Defendants have not provided a declaration to

---

[8] Section 1927 of title 28 of the United States Code provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred for such conduct." Under this section, the sanctions only apply to "subsequent filing and tactics which multiply the proceedings." *Moore v. Keegan Mgmt. Co.*, 78 F.3d 431, 435 (9th Cir. 1996). To award sanctions under section 1927, the court must make a finding of recklessness or bad faith. See *Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001). *Rutherford v. Evans Hotels, LLC*, No. 18-CV-435 JLS (MSB), 2021 U.S. Dist. LEXIS 92626, at *4 (S.D. Cal. May 14, 2021)

dispute this fact.

29. Big Block Realty, Inc exerts agency type control over their third party lead source for telemarketing leads. Defendant's attorneys and both Defendants have not provided a declaration to dispute this fact.

30. Big Block Realty, Inc requires its lead source to ask certain questions of the prospective clients before the lead source can transfer the call to Big Block Realty, Inc employees. Defendant's attorneys and both Defendants have not provided a declaration to dispute this fact.

31. Carolein Gorges Toma is the agent of Big Block Realty, Inc and Carolein Gorges Toma controls the acts and actions of Big Block Realty, Inc as her alter ego. Defendant's attorneys and both Defendants have not provided a declaration to dispute this fact.

32. Defendant Carolein Gorges Toma used an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(a)(1) to place its calls to Plaintiff seeking to solicit its services and has the capacity to store numbers and dial them automatically. The Defendants utilized a random or sequential number generator to call Plaintiff.

33. The Honorable Chief Judge Dana M. Sabraw has ruled, in *Gross vs. GG Homes,* in the Southern District of California, that the US Supreme Court's ruling in *Duguid vs. Facebook* does not apply at the motion to dismiss stage of the

litigation but rather at the Rule 56 summary judgement phase. *Gross v. GG Homes, Inc.*, No. 3:21-cv-00271-DMS-BGS, 2021 U.S. Dist. LEXIS 127596 (S.D. Cal. July 8, 2021). The court went on to make a further clarification:

a. "…the Court noted that "[t]he newly clarified definition of an ATDS is more relevant to a summary judgment motion than at the pleading stage." (ECF No. 11 at 14 (emphasis added).) Defendant reframes the Court's Order as suggesting that "the ATDS issue is never properly decided at the pleadings stage." (ECF No. 14-1 at 13 (emphasis added).) The Court disagrees with this interpretation[9], as the Order simply addressed the relevance of *Duguid* to the particular circumstances of this case, and not to all cases involving ATDS allegations. As noted, Plaintiff is proceeding pro se. The Supreme Court has repeatedly instructed that "[a] document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (quoting *Estelle v. Gamble*, 429 U.S.

[9] When Chief Judge Sabraw said that he "disagrees with this interpretation" he actually in fact meant that he disagrees with attorney Kristin Haule and attorney Christine Reilly, the same attorneys in this case.

> 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)). Here, the Court found Plaintiff's pro se allegations about the nature of the texting device sufficient to state a claim under Section 227(b). The Court did not hold that the definition of an ATDS is irrelevant to deciding a motion to dismiss. The Court meant to convey that while Plaintiff's FAC, liberally construed, survived Defendant's motion to dismiss, the <u>definition of an ATDS under Duguid will pose a more imposing barrier at the summary judgment stage</u> where Plaintiff would have to demonstrate that the device at issue randomly or sequentially generated her telephone number. *Gross v. GG Homes, Inc.*, No. 3:21-cv-00271-DMS-BGS, 2021 U.S. Dist. LEXIS 198339, at *4-5 (S.D. Cal. Oct. 14, 2021) (*emphasis added*).

34. Chief Judge Sabraw did not reverse his July 8, 2021 holding. Chief Judge Sabraw has articulated that Duguid is still more applicable to the summary judgment stage. The *Duguid* holding, when viewed through the pro se lens at the early 12b stage, is not to be applied harshly. This makes common sense. If Duguid were applied as Defendants wrongly suggest, then no plaintiff would ever be able to get past the pleading stage. When a telemarketer calls, they are incredibly evasive. They hardly ever confess that they are using a device or system that randomly or sequentially generated the victim's number. *Duguid* does not

require it at the early pleading stage.

## II. STANDING

35. The court must evaluate lack of statutory standing under the Rule 12(b)(6) standard. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). However, because Plaintiff is proceeding *pro se*, his complaint "must be held to less stringent standards than formal pleadings drafted by lawyers" and must be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (reaffirming standard for pro se complaints post-*Twombly*).

36. Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state: A valid injury in fact; which is traceable to the conduct of Defendants; and is likely to be redressed by a favorable judicial decision. See, *Spokeo, Inc. v. Robins*, 578 U.S.____(2016) at 6, and *Lujan v. Defenders of Wildlife*, 504 U.S. 555 at 560.

### The "Traceable to the Conduct of Defendant" Prong

37. Defendants do not dispute the first prong. The second prong required to establish standing at the pleadings phase is that Plaintiff must allege facts to show that their injury is traceable to the conduct of Defendants. In the instant case, this prong is met by the fact that the calls to Plaintiff's cellular phone were placed either by Defendants directly, or by Defendant's agent at the express direction and control of Defendants. See *Jones v. Royal Admin. Servs., 866 F.3d 1100 (9th Cir.*

*2017)* ten factor test from the 9th Circuit and Civil code §2307.

**The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong**

38. The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion. In the present case, Plaintiff's Prayers for Relief includes a request for damages for each call made by both Defendants, as authorized by statute in 47 U.S.C. § 227. The statutory damages were set by Congress and specifically redress the financial damages suffered by Plaintiff. Furthermore, Plaintiff's Prayers for Relief request injunctive relief to restrain Defendants from the alleged abusive practices in the future. The award of monetary damages and the order for injunctive relief redress the injuries of the past and prevent further injury in the future. Because all standing requirements of Article III of the U.S. Constitution have been met, as laid out in *Spokeo, Inc. v. Robins*, 578 U.S. ___ (2016), Plaintiff has standing to sue both Defendants on the stated claims.

39. The Complaint does not violate the federal pleading standards for *pro se* litigants under Rules 8 and 10. It is no work of art for sure. But Plaintiff is not a licensed attorney or member of the Bar as the Honorable Judge Curiel has held in his opinion at ECF No. 35 in 16-CV-2415-GPC-BGS at PageID.452. It is ironic that Defendants on the one hand argue that Plaintiff's Complaint is written by a

sophisticated litigant and then turn around and draft 25 pages about how horrible it is. *Res ipsa loquitur.* The sloppiness speaks to the fact that this plaintiff should be held to the lower *pro se* standard. The sophisticated nature of the Complaint means that it passes TCPA muster. Defendants cannot have their cake and eat it too. It is either one or the other. The Complaint cannot be so good that Plaintiff is held to the attorney standard and yet so bad that it must be dismissed with prejudice under Rules 8 and 10. Defendant's argument is truly non-sequitur and backwards. More importantly, Ms. Haule has filed an Answer to this exact same complaint in other cases. Thus her argument is a fraud and deceit upon the Court. If Ms. Haule was able to file an answer in another recent TCPA case by this Plaintiff, then why is she having a problem now? In fact, she is not. Ms. Haule should be sanctioned for her conduct. Further, she should be sanctioned for her lack of candor to this Court.

40. The Court does not lack subject matter jurisdiction. This argument is devoid of merit and frivolous on its face. The Defendant's attorneys have made this exact argument over and over again and lost every time with every judge. Counsel for the defense should be sanctioned for the repeated conduct. When a person files the same argument over and over, and loses again and again, that is the very definition of vexatious conduct. Why attorneys are allowed to get away with this conduct is shocking.

41. The Complaint does not fail to state a claim under the TCPA as it sets forth sufficient direct and sufficient vicarious liability facts. A short and plain statement is all that is required and the facts plead in the Complaint must be taken as true at this stage of the pleadings.

42. The Court does not lack Article III standing and therefore has subject matter jurisdiction. Defendant's attorneys have made this exact argument before, repeatedly, and lost every time by every judge.

43. The same attorneys in this case filed the same motion to dismiss in 18-CV-2247-CAB-MDD on 11/16/2018 at ECF No. 26. Knowing that their arguments were frivolous and unsupported by the law, they had their client write a huge check to Plaintiff to settle the matter and withdrew their motion. *See* ECF No. 44 in 18-cv-2247.

44. Kristin Haule claims that she cannot understand the Complaint in this matter. However, what she has failed to disclosed to the Court is that she very easily responded to the exact same complaint in 19-cv-00941-CAB-MSB on 6/13/2019 when she filed an Answer (PageID.55 to PageID.74), without first filing a motion to dismiss, at ECF No. 4. It is dishonest for Kristin Haule to say, in this matter, that she cannot read and understand the Complaint here, when she in fact did just that a mere two years ago in *Ewing vs. United Business Funding*. This blatant fraud upon the Court should not go unnoticed. Why attorneys are allowed

to get away with this conduct is shocking.

45. At PageID.70 in ECF No. 6-1 filed on 10/27/2021 in this matter, Defendants assert, under Rule 11, that the Complaint "is fatally deficient, unintelligible, and ripe for dismissal…." And yet, in *Ewing vs. United Business Funding*, this same attorney was able to file a 20-page Answer to the exact same complaint. In Defendant's footnote 2 at PageID.70 they confess: "he has filed around ***100*** substantially similar (and often nearly identical) complaints like the one at bar in this District…." Defendants have actually admitted, in writing, under Rule 11, that this Complaint is identical to the 100 prior complaints, including the one that Kristen Haule so easily filed an Answer to in 19-cv-00941-CAB-MSB. This is a blatant lack of candor to this Court. The fact that an attorney at law, member of the bar and officer of this court would even try to pull this kind of dishonest conduct shocks the conscious. Why attorneys are allowed to get away with this conduct is shocking.

46. It is rather interesting that Toma is represented by the same attorneys as Big Block and yet they claim that Toma and Big Block are not related in any manner whatsoever. That is of course unbelievable and another fraud upon the Court. Clearly Toma holds her real estate license under Big Block. They are so related and so connected it is absurd for Defendants to state and assert otherwise. *See* lines 19-21 at PageID.71. If Big Block truly had nothing to do with Toma, then

Big Block would not be spending tens of thousands of dollars on her legal defense. It is because they are so connected and there is such significant control that Big Block has taken it upon themselves to pay for Toma's entire legal defense by one of the most expensive TCPA litigation firms in the entire US.

47. It is noteworthy to point out that none of the Defendants, nor counsel, have provided any declarations to the Court under oath about any fact. They could have. They chose not to. That is highly suspect. It is interesting that nowhere in Defendant's subparagraph heading "B" starting on their page 12, does it actually state, assert or deny the control connection and the respondeat superior relationship between Toma and Big Block. Nor can they. Under California law, a broker of record controls its agents. Under California law, a broker of record is responsible and liable for the acts of its agents that are within the course and scope of real estate sales (like telemarketing to MLS expired listings).

48. Kristin Haule asserts, in footnote 2 and elsewhere, that Plaintiff has never taken any one of his 100 case to trial. The Court can take judicial notice that in all 53 cases that Kristin Haule has been attorney of record on, she has not taken one single case to trial either. The fact that Plaintiff has never taken a case to trial should be a positive attribute and demonstrate to the Court that he has never wasted a District Judge's time in that regard. It also demonstrates that the Magistrate Judges hired by the District Judges in this District are all outstanding

and consummate professionals at the ENE.

49. Former Chief Judge Burns stated in *Ewing vs. Empire Capital Funding*, at ECF No. 96, 17-cv-2507-LAB-MDD at PageID.1243, line 28: "A fair and efficient judiciary requires civility and professionalism on the part of litigants." The Courts of this District must apply the law to all litigants, evenly, equally and fairly. This rule set forth by the Honorable Judge Larry A. Burns should be applied, therefore, to Defendants and their attorneys. Fairness requires it.

50. Below is a list of all the derogatory and unprofessional attacks made by Kristin Haule directed at Plaintiff Anton Ewing in her motion to dismiss, none of which were needed nor necessary for legal argument:

a. "…fatally deficient, unintelligible…." Line 3 at PageID.70
b. "…vaguely, conclusorily [sic] and inconsistently… " Line 4 at PageID.70
c. "… in a classic 'shotgun' fashion…" Line 5 at PageID.70
d. "… improperly conflated…" Line 7 at PageID.70
e. "… a serial TCPA litigant…" Line 11 at PageID.70
f. "… his incoherent Complaint…" Line 13 at PageID.70
g. "…frequently contradicts his own allegations…" Line 14 at PageID.70
h. "… a myriad of redundant and irrelevant legal arguments and baseless allegations…" Line 15 at PageID.70
i. "… merely recycles conclusory allegations…" Line 16 at PageID.70
j. "… merely regurgitating… Line 2 at PageID.71
k. "…recycling threadbare allegations from other lawsuits…" Line 3 at

PageID.71

l. "…lumps together conflates and fails to… " Line 7 at PageID.71

m. "…an impermissible 'shotgun' fashion…" Line 9 at PageID.71

n. "…egregious examples…" Line 26 at PageID.71

o. "… threadbare allegations…" Line 4 at PageID.72

p. "…fatally flawed…" Line 11 at PageID.72

q. "…seemingly hopes his purported pro se status…" Line 3 at PageID.73

r. "… many fatal pleading deficiencies…" Line 4 at PageID.73.

s. "… irrelevant, impertinent, and immaterial allegations…" Line 12 at PageID.73

t. "From what little can be deciphered…" Line 17 at PageID.73.

u. "…vaguely refers to…" Line 15 at PageID.74

v. "… glaring inconsistencies and contradictions…" Line 20 at PageID.74

w. "…conclusory, disjointed, contradictory, formulaic, and unintelligible allegations…" Line 22 at PageID.74

x. "… utterly lacking…" Line 1 at PageID.75.

y. "…oft-miscited or misapplied legal authority…" Line 2 at PageID.75

z. "… interject irrelevant and immaterial allegations…" Line 3 at PageID.75

aa. "…plainly deficient allegations…" Line 5 at PageID.75

bb. "…it is a classic impermissible 'shotgun' pleading…" Line 1 at PageID.78

cc. "… Plaintiff improperly conflates…" Line 8 at PageID.78

dd. "… he jumbles together…" Line 12 at PageID.78

ee. "…in true 'shotgun' fashion." Line 13 at PageID.78

ff. "… Plaintiff's plainly deficient and improper 'shotgun' Complaint…" Line 19 at PageID.78

gg. "…he vaguely and inconsistently concludes…" Line 2 at PageID.81

hh. "…utterly confusing and unsupported…" Line 9 at PageID.81

ii. "… the conclusory, implausible, and unintelligible allegations…" Line 17 at PageID.81

jj. "…parrots the wording…" Line 20 at PageID.85

kk. "… a smattering of entirely conclusory and unsupported allegations…" Line 3 at PageID.87

ll. "… contradictory and inherently implausible allegations…" Line 21 at PageID.87

mm. "…just as baseless." Line 9 at PageID.90.

nn. "… threadbare, conclusory, and contradictory 'shotgun' allegations…" Line 10 at PageID.90.

51. At paragraph E on PageID.90, Kristin Haule asks this Court to believe that "Plaintiff's CIPA claim in Count V, based on a purported violation of Cal. Penal Code §632, is just as baseless." Ms. Haule is lying to the Court. The Complaint never[10] brings any cause of action under PC §632. PC §632 applies to landlines. The Complaint only brings a cause of action under PC §637.2 and PC §637.2. Those code sections apply to cellular phones. It appears that Ms. Haule has acted with knowing intent here. Her argument is so outrageous and out of line that it warrants referral to the State Bar of California for disciplinary action.

---

[10] Local Rule 2.1 provides "We expect lawyers to refrain from attributing to an opponent a position the opponent has not clearly taken." It is clear that Plaintiff has not taken a 632 position. Defendant's attorney should be sanctioned.

52. Plaintiff Terrence Lamar Wilburn, in *Wilburn vs. Bratcher* (cited by Defendants in footnote 10), who is a convicted child rapist, was granted leave to amend his 43-page complaint (in 12-point font), which he filed in Superior Court and the defendants removed to federal court. *See Wilburn v. Bratcher,* No. 2:15-cv-00699-TLN-GGH, 2015 U.S. Dist. LEXIS 173168 (E.D. Cal. Dec. 28, 2015). Mr. Wilburn's complaint was not just a "shotgun" but rather; it was more akin to a thermo-nuclear explosion spanning dozens of defendants and over 13 different causes of action. If Wilburn's complaint is the firepower test, then Plaintiff Ewing's Complaint is a mere air-pump BB-pellet gun. The fact that Defendants would even cite this case is bizarre. Perhaps they did not read it.

53. Any item or argument or issue that has not been specifically and expressly objected to, is hereby objected to in its entirety. Defendants have failed to meet their burden. Defendants have failed to produce any evidence as well.

54. The motion to dismiss, including the motion to strike, should be denied and Defendants sanctioned by the Court.

Respectfully Submitted this 6th day of July, 2022.

/S/ Anton Ewing
Anton Ewing, Plaintiff

Civil Case No.3:21-CV-001724

**PROOF OF SERVICE**

IT IS HEREBY CERTIFIED THAT:

I, Anton Ewing, am a citizen of the United States of America and am at least eighteen years of age and a party to this action. My address is 3077 Clairemont Drive, #372, San Diego, CA 92117. I do not have ECF filing privileges in this matter.

I am a party to the above captioned action.

On July 6, 2022, as required by and in accordance with the Federal Rules of Civil Procedure, I caused service of the following documents: Plaintiff's Response in Opposition to Defendant's Motion To Dismiss

Said documents were served at my direction through the United States Mail, by having such documents placed in a sealed envelope, with postage thereon fully prepaid for first class mail, for collection and mailing at San Diego, CA 92117, following ordinary business practices, to Defendant's attorney with mailing address as follows:

Christine M. Reilly, Esq. and Aaron Paul Heeringa
Manatt, Philips & Phelps, LLP
2049 Century Park East, Suite 1700
Los Angeles, CA 90067

All CM/ECF registered users will be served by the Clerk of the Court upon posting of this document on the docket.

I have read the above and it is true, correct and accurate under penalty of perjury under the laws of the United States.

Date: July 6, 2022

Anton Ewing